UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JASON CANTRELL #397429,

    Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS, ANTHONY HEILIG,
and SCOTT ARP,

    Defendants.

NO. 1:18-cv-1163

HON. GORDON J. QUIST

MAG. PHILLIP J. GREEN

_____

Jason Cantrell #397429
*In Pro Per*
Bellamy Creek Correctional Facility
1727 West Bluewater Highway
Ionia, MI  48846

Raina Korbakis (P49467)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Department of Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
_____/

# BRIEF IN SUPPORT OF MDOC DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST

Dana Nessel
Attorney General

Raina Korbakis (P49467)
Assistant Attorney General
Attorney for Defendants
Criminal Appellate Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7650
korbakisr@michigan.gov
P49467

Date:  March 18, 2019

## CONCISE STATEMENT OF ISSUE PRESENTED

1. A prisoner must properly exhaust his administrative remedies before filing a complaint under 42 U.S.C. § 1983. Where it appears that Cantrell did not exhaust part of the claims in his complaint, should this Court grant Defendants Heilig's and Arp's motion for partial summary judgment?

ii

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Under 42 U.S.C. § 1997e(a), a prisoner cannot maintain a civil rights action challenging prison conditions if he did not first exhaust all available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81, 90-95 (2006).

## STATEMENT OF FACTS

Plaintiff Jason Cantrell (Cantrell) is a *pro se* prisoner currently confined as a Level IV prisoner in the Michigan Department of Corrections at Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan.[1] In October 2018, Cantrell filed his complaint under 42 U.S.C. § 1983 and he appears to allege claims of excessive force and retaliation. (Compl., R. 1, Pg ID 3-4.) The incidents that Cantrell complains of purportedly took place at Bellamy Creek.

Cantrell named three defendants in his complaint: the Michigan Department of Corrections (MDOC), Corrections Officer Anthony Heilig, and Corrections Officer Scott Arp, and he seeks compensatory and punitive damages. (Compl., R. 1, Pg ID 2, 4.) In a screening opinion and an order for partial dismissal dated December 4, 2018, this Court dismissed Cantrell's complaint against the MDOC with prejudice for failure to state a claim. (Op., R. 5, Pg ID 24-28; Order, R. 6, Pg ID 29.) This Court then referred the case to early mediation (Order, R. 7, Pg ID 30) and Defendants Heilig and Arp later sought exclusion. (Statement, R. 8, Pg ID 36). On January 10, 2019, this Court granted their request and removed the case from early mediation. (Order, R. 10, Pg ID 37.)

This Court previously summarized the allegations in Cantrell's complaint. (Op., R. 5, Pg ID 24-26.) In brief, Cantrell alleged that on August 19, 2017,

---

[1] Cantrell is currently serving prison sentences for two armed robbery convictions and for possession of a firearm during the commission of a felony (felony firearm). See Offender Tracking Information System (OTIS) at: http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=397429.

Defendant Heilig conducted a search of his cell and "destroyed" or "scatter[ed]" some of Cantrell's personal property. When Cantrell said he wanted to talk to a higher up, Heilig purportedly said: "[G]o lock your punk ass down." (Compl., R. 1, Pg ID 3.) Cantrell claims that his cell door was later opened for prisoners to go to the medication line and that after he left his cell and tried to summon a higher up, Heilig said: "[K]eep it up and you['re] going to get what's coming to you." Cantrell says he returned to his cell but stood in the doorway to keep the door from closing, and that Heilig then called for assistance and placed Cantrell in handcuffs. (*Id.*) According to Cantrell, Defendant Arp responded to the request for assistance and Arp immediately grabbed Cantrell by one arm, while Heilig had the other, and the two men began walking Cantrell toward the stairs. (*Id.*) Cantrell claims that Heilig then said: "[G]et ready, I have something special for your bitch ass" and, as the trio reached the stairs, Heilig repeatedly shouted "stop resisting." As they reached the bottom of the stairs and began walking onto the base of the unit, Cantrell asserts that Arp intentionally stuck his foot out in front of Cantrell to take him to the ground. At that point, Cantrell claims that Heilig and several other officers got on top of him, and that Heilig struck him on the left side. Cantrell claims he sustained two fractured ribs and pain in his pelvis, femur, hip, neck and feet. (*Id.*, Pg 3-4.)

      Cantrell also alleges retaliation by Defendant Heilig – i.e., that Heilig wrote him up for a misconduct of assault and battery on a staff victim. The Hearing

4

Officer found insufficient evidence of guilt on the misconduct charge.  (Compl., R. 1, Pg ID 3-4.)

A thorough investigation into Cantrell's allegations of excessive force against Defendants Heilig and Arp took place, which included the Investigator reviewing a DVR, obtaining statements from Heilig and Arp, and interviewing Cantrell, Heilig and Arp.  The Investigator ultimately determined that there was insufficient evidence of work rule violations relating to use of force, unbecoming conduct, and inhumane treatment of individuals by Heilig and Arp.  The Investigator further concluded, in part, that:

- Cantrell did not comply with staff direction until an ECD was activated;
- Cantrell at one point became "disruptive, unmanageable and attempt[ed] to hurt the Officers;"
- Cantrell demonstrated active resistance and aggression and admitted to being upset that day and to having anger issues;
- Cantrell would not respond to questions from a registered nurse who attempted to evaluate him after the incident;
- The registered nurse saw no obvious injuries on Cantrell;
- Cantrell said the injuries he mentioned in the grievance – to his pelvis, hip, femur, and feet – were sustained from a motorcycle accident;
- There was "insufficient evidence to support Cantrell's allegations of excessive force;" and that
- Heilig's and Arp's actions in controlling Cantrell were objectively reasonable when using force and within the guidelines.

For purposes of this motion, Defendants Heilig and Arp concede that Cantrell exhausted his excessive force claim.

# ARGUMENT

I. **A prisoner must properly exhaust his administrative remedies before filing a complaint under 42 U.S.C. § 1983. Because Cantrell did not properly exhaust his retaliation claim, this Court should dismiss that claim from the lawsuit.**

A. **Exhaustion is a mandatory, threshold issue.**

A prisoner-plaintiff must exhaust his administrative remedies before filing a § 1983 complaint. Under 42 U.S.C. § 1997e(a), a prisoner cannot maintain a civil rights action with respect to prison conditions brought under any federal law if he did not first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Proper exhaustion requires that a prisoner complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Nussle*, 534 U.S. at 523; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Exhaustion is an issue that must be determined before the court can review the merits of the plaintiff's claims and the remaining defenses raised by the defendants.[2]

The Prison Litigation Reform Act (PLRA) attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to

---

[2] A prisoner no longer has to plead or demonstrate exhaustion to satisfy the PLRA requirements of 42 U.S.C. § 1997e(a); failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007).

"affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Nussle*, 534 U.S. at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Id*. at 524. Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison hearing process and accordingly provides prisons with a fair opportunity to correct their own errors. *Woodford,* 548 U.S. at 94. This is important in relation to prison systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973).

### B. MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure.

The procedural and substantive requirements necessary for proper exhaustion are set forth in MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007), which states, in part, as follows:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.

* * *

> F. […] Grievances that raise the following non-grievable issues also shall be rejected:
>
> 2. Decisions made in hearings conducted by hearings officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g.,

sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).

* * *

(Defs.' Ex. A).

### C. Cantrell did not properly exhaust his retaliation claim because he did not raise that claim at his misconduct hearing.

Although it appears that Cantrell exhausted his excessive force claim against Defendants Heilig and Arp, Cantrell did not exhaust his retaliation claim. Notably, Cantrell's complaint alleges retaliation only by Defendant Heilig – not Arp. (Compl., R. 1, Pg ID 4.) As noted above, misconduct decisions and issues related to the hearing process are non-grievable under MDOC's grievance policy. (Defs.' Exhibit A at ¶F(2)). Under *Siggers v. Campbell,* 652 F.3d 681, 693-94 (6th Cir. 2011), a prisoner claiming that the issuance of a major misconduct violation constituted retaliation must raise that issue at the misconduct hearing. Here, Cantrell did not raise his claim of alleged retaliation by Heilig at his misconduct hearing. The Class I Misconduct Hearing Report indicates that Cantrell claimed he was not guilty of the assault and battery charge (i.e., that he "was going with the motion" and "did not do anything wrong"); Cantrell did *not* allege that Defendant Heilig issued the misconduct charge in retaliation against him. (Defs.' Ex. B.)[3] Stated differently, Cantrell did not raise the claim of retaliation at his misconduct hearing, as he was required to do to properly exhaust the claim. Nor did Cantrell

---

[3] As noted above, Cantrell in his complaint alleged retaliation only by Heilig, not Arp. But even if Cantrell had also alleged retaliation by Arp, Cantrell did not raise that claim at his misconduct hearing.

8

mention retaliation by Heilig (or Arp) in his statement.  (Defs.' Ex. C.)  This Court should therefore dismiss Cantrell's retaliation claim from this lawsuit.

## CONCLUSION AND RELIEF REQUESTED

Because the record does not show that Cantrell properly exhausted his retaliation claim against Defendant Heiling – or Defendant Arp for that matter – Defendants respectfully ask this Court to grant this motion for partial summary judgment and dismiss Cantrell's retaliation claim from this lawsuit.

Respectfully submitted,

Dana Nessel
Attorney General

*s/Raina Korbakis*
Raina Korbakis (P49467)
Assistant Attorney General
Attorney for MDOC Defendants
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
korbakisr@michigan.gov

Dated:  March 18, 2019          P49467
Korbakis\FED Intake\2018-0238395-B Cantrell\Brf in Sup of Partial MSJ (exhaustion)