UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CANTRELL,

    Plaintiff,

-v-

ANTHONY HEILIG and
SCOTT ARP, sued in
their individual capacities,

    Defendants.

Case No. 1:18-cv-1163
Hon. Gordon J. Quist
Mag. Phillip J. Green

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT

### NATURE OF THE ACTION

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff, Jason Cantrell #397429, seeking compensatory and punitive damages for emotional, mental, and physical injuries arising out of the deprivation of his Eighth Amendment right to be free from cruel and unusual punishment under the United States Constitution.

### PARTIES

1. Plaintiff, Jason Cantrell is a prisoner in the custody of the Michigan Department of Corrections (MDOC), currently incarcerated in the Oaks Correctional Facility (ECF) in Manistee, Michigan. The present claim arises from events that occurred at the Ionia Bellamy Creek Correctional Facility (IBC).

2. Defendant Heilig is an employee of MDOC working as a Correctional Officer at the Bellamy Creek Correctional Facility.

3. Defendant Arp is an employee of MDOC working as a Correctional Officer at the Bellamy

1

Creek Correctional Facility.

4.  Defendants Heilig and Arp are being sued in their individual capacities and were acting under color of state law at all relevant times.

## JURISDICTION AND VENUE

5.  Jurisdiction in this case is conferred by 28 U.S.C. § 1331 and § 1342(a), that authorizes Federal Courts to maintain actions brought under 42 U.S.C. § 1983.

6.  This Court has personal jurisdiction over Defendants because they work in their individual capacities within this District.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendants work in this District, and the events giving rise to this Complaint occurred in the Western District of Michigan.

## STATEMENT OF FACTS

8.  Plaintiff avers that while assigned to the Specialized Housing Unit ("Protective Custody") ("Unit 2") at the Ionia Bellamy Creek Correctional Facility ("IBC") on August 19, 2017, he was subjected to retaliation and the use of excessive force at the hands of two Corrections Officers ("C.O."), C.O. Anthony Heilig (hereinafter "Defendant Heilig") and C.O. Scott Arp (hereinafter "Defendant Arp").

9.  Plaintiff submits that on August 19, 2017, at around 7:15 p.m., he was in his assigned cell of 246 on B-Upper Wing in Unit 2 when Defendant Heilig stopped at Plaintiff's cell door and instructed the Plaintiff and his assigned cellmate to exit the cell for a cell search. Both prisoners exited the cell.

10. Defendant Heilig conducted a search of Plaintiff's assigned cell (246).

11. Upon returning to his cell after the search, Plaintiff noticed that during the search Defendant Heilig had destroyed photographs of the Plaintiff's family members by ripping them up and scattering them across the cell floor. In addition, Plaintiff discovered that Defendant Heilig removed all of the Plaintiff's clothing from his wall locker and left them strewn across the cell floor as well as in the cell toilet.

12. Upset with the treatment of his personal property at the hands of Defendant Heilig, Plaintiff informed Defendant Heilig that he wished to speak to a sergeant or to the shift command so that he could redress his grievance with Defendant Heilig's conduct.

13. In response to that request, Defendant Heilig directed the Plaintiff to "go lock your punk ass down." Plaintiff complied.

14. At approximately 8:00 p.m. on August 19, 2017, Plaintiff's cell door was opened for medication lines. Plaintiff exited his cell and headed towards the medication lines in an attempt to summon a sergeant, again orally seeking a remedy to redress his initial grievance. At that time, Defendant Heilig again instructed Plaintiff to return to his cell, using profanity while doing so. Defendant Heilig also informed the Plaintiff to "keep it up and you're going to get what's coming to you."

15. At that time, Plaintiff returned to his assigned cell, but stood in the cell doorway such as to keep the cell door from closing. In response, Defendant Heilig called for assistance on his radio alleging that the Plaintiff was refusing to lockdown. After calling for assistance, Defendant Heilig placed Plaintiff in handcuffs.

16. In response to Defendant Heilig's call for assistance, among many other officers, Defendant Arp responded and immediately grabbed Plaintiff by one arm while Defendant Heilig had the other and began walking Plaintiff towards the stairs.

17. Plaintiff contends that while he was being escorted towards the stairs by Defendants Heilig and Arp, Defendant Heilig told the Plaintiff to "Get ready, I have something special for your bitch ass."

18. As they reached the stairs, Defendant Heilig began shouting, "stop resisting" approximately six times.

19. Plaintiff states that as Plaintiff and the Defendants reached the bottom of the stairs and began to walk onto the base of the unit, and while Defendant Heilig continued to shout "stop resisting", Defendant Arp immediately stuck his foot out in front of the Plaintiff's to take the Plaintiff to the ground.

20. Immediately after being taken to the ground with several other officers already on top of him, Defendant Heilig jumped on top of the Plaintiff and began striking him about the left side of his body. As a result of the August 19, 2017 incident, Plaintiff sustained two fractured ribs. Plaintiff also sustained severe pain in his pelvis, left femur, left hip, his neck, and both feet.

21. Plaintiff insists that at no time did he resist Defendants Heilig and/or Arp as both Defendants allege.

22. On August 19, 2017, Defendant Heilig issued Plaintiff a Misconduct Report charging Plaintiff with the Class I charge of Assault and Battery (Staff Victim), in which Defendant Heilig alleges that, "while escorting Prisoner Cantrell #397429 from 2-246B to Housing Unit he pulled away at the top of the stairs causing me to lose my balance. Prisoner Cantrell continued to tense his body and resist our efforts to gain control. Prisoner Cantrell was placed on the ground, given orders to stop resisting. Prisoner Cantrell continued to resist. We gained control of Prisoner Cantrell and finished the escort to Housing Unit 8." Exhibit 1, Misconduct Report of 8/19/17, see also ECF No. 17-3, pg. 3.

23. As previously asserted at PARAGRAPH 12, at no time did Plaintiff resist or continue to resist the Defendants during the escort to Housing Unit 8.

24. At a subsequent hearing regarding the August 19, 2017 Misconduct Report that took place on August 23, 2017, Plaintiff was found not guilty of the charged violation. In support of that finding the Hearing Officer concluded the following:

> The video shows the reporter lose his footing, but it is not clear that prisoner at any time tenses up. Prisoner's explanation of the event, that he was just going with the motion, also is consistent with the video. Three other staff members were present, but their statements were not submitted to determine the veracity of the reporter or the prisoner. Without such statements of verification, I am not convinced that prisoner physically resisted or interfered with an employee. In addition, the Misconduct Report and the video do not indicate that prisoner's action was a non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another.

Exhibit 2, Class I Misconduct Hearing Report of 8/23/2017, see also ECF No. 17-3, pg. 2.

25. At this misconduct hearingt, Plaintiff informed the hearing officer that the action by Defendant Helig was in retaliation of him wanting to talk to the supervisor about the behavior of Defendant.  See attached Exhibit 1.

26. Defendants actions were done maliciously, willfully and wantonly.

## FIRST CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

27. Plaintiff incorporates by reference all preceding paragraphs as fully stated herein.

28. In order to state a claim for retaliation under the First Amendment, Plaintiff must prove: (1) that he engaged in protected conduct, (2) that an adverse action was taken against the plaintiff that would deter "a person of ordinary firmess" from continuing to engage in that

protected conduct, and (3) that the adverse action was motivated, in part, by plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.) (en banc).

29. Plaintiff, under the First Amendment, was entitled to engage in protected speech in asking to speak to a supervisor regarding the search of his cell.

30. MDOC Policy requires an inmate to speak to a supervisor to begin the grievance procedure.

31. As a result of requesting to speak to a supervisor, Defendants Heilig and Arp improperly utilized excessive force in removing Plaintiff from his cell, throwing him to the ground, and beating him.

32. As a result of requesting to speak to a supervisor, Defendant Heilig wrote Plaintiff a misconduct ticket.

33. Defendants resorted to the use of excessive force because Plaintiff asked to speak with a supervisor, which would sufficiently chill a person of ordinary firmness from exercising the constitutional right to engage in protected speech.

## SECOND CAUSE OF ACTION
## EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT

33. Plaintiff incorporates by reference all preceding paragraphs as fully stated herein.

34. Defendants Heilig and Arp did maliciously inflict unnecessary and wanton punishment in violation of the Eighth Amendment of the United States Constitution.

35. Plaintiff's injuries include broken ribs, severe pain in his pelvis, left femur, left hip, his neck, and both feet, along with his psychological and emotional trauma. The extent and seriousness of Plaintiff's injuries are objectively sufficiently serious injuries, thereby implicating the Eighth Amendment.

## EXHAUSTION

36. The investigation conducted by MDOC concluded that Defendants Heilig and Arp did not

6

violate work rules relating to the use of force.

37. Plaintiff is procedurally barred from grieving Defendant Heilig misconduct ticket under MDOC grievance procedure, PD 03.02.130 (Paragraph F.2).

38. At the misconduct hearing, Plaintiff described that he had done nothing wrong. He explained that he only asked to speak to a supervisor. In response, according to Plaintiff, Defendant Heilig wrote Plaintiff the false misconduct.

39. At the beginning of misconduct hearing, Plaintiff was informed that the hearing officer had reviewed the video and had determined that Plaintiff was not guilty of the misconduct charge.

40. Plaintiff informed the hearing officer of the events leaving up to his being escorted by the Defendants, including telling him that Plaintiff thought that the behavior of Defendant Helig was in retaliation to his requesting to talk to a supervisor.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests this Court grant the following relief:

41. Issue a Declaratory Judgment that the rights of Plaintiff were violated by Defendant.

42. Award compensatory damages in an amount to be determined at trial.

43. Award punitive damages in an amount to be determined at trial.

44. Award attorney's fees and costs.

45. Award any other relief that this Court deems just and equitable.

Respectfully submitted,

/s/ Daniel E. Manville
Daniel Manville (P39731)
Director, Civil Rights Clinic
Michigan State University College of Law
PO Box 1570
East Lansing, Michigan 48825
(517) 432-6866
Daniel.manville@law.su.edu

## PROOF OF SERVICE

I, Daniel E. Manville certify, under penalty of perjury, that on September 14, 2019 caused a copy of the above document to be served by email on Defendants' counsel.

/s/ Daniel E. Manville
Daniel E. Manville