UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J<span>ASON</span> C<span>ANTRELL</span> #397429,

      Plaintiff,                         Hon. Gordon J. Quist

v.                                        Case No. 1:18-cv-1163

A<span>NTHONY</span> H<span>EILIG</span>, et al.,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 77) and Plaintiff's Motion for Summary Judgment (ECF No. 88). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part and Plaintiff's motion be denied.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, but the events giving rise to this matter occurred while Plaintiff was housed at the Bellamy Creek Correctional Facility. In his amended complaint, (ECF No. 40), Plaintiff alleges the following.

On August 19, 2017, Corrections Officer Anthony Heilig searched Plaintiff's cell. During this search, Heilig destroyed photographs of Plaintiff's family, placed certain items of Plaintiff's clothing in the toilet, and scattered the rest of Plaintiff's clothing

-1-

throughout the cell. Upon realizing what Heilig had done to his personal property, Plaintiff informed Heilig that he wanted to speak with a sergeant or shift commander so that he could "redress his grievance" regarding Heilig's conduct. Heilig responded by telling Plaintiff to "go lock your punk ass down."

Approximately 45 minutes later, Plaintiff's cell door was opened "for medication lines." Plaintiff exited his cell and attempted to speak with a sergeant regarding Heilig's conduct. Heilig instructed Plaintiff to return to his cell and further stated, "keep it up and you're going to get what's coming to you." Plaintiff returned to his cell, but remained in the doorway with the intention of preventing his cell door from closing. Heilig interpreted Plaintiff's action as a refusal to lockdown and requested assistance. Heilig then placed Plaintiff in handcuffs after which Corrections Officer Scott Arp arrived to assist.

Heilig and Arp began walking Plaintiff away from the housing unit. As the group neared a stairwell, Heilig stated to Plaintiff, "get ready, I have something special for your bitch ass." Even though Plaintiff was not resisting, Heilig began repeatedly shouting, "stop resisting." Arp then forced Plaintiff to the ground after which Heilig began assaulting Plaintiff. As a result of this encounter, Heilig charged Plaintiff with assault of a staff member. Following a hearing, Plaintiff was found not guilty of this charge.

Plaintiff asserts the following claims against Heilig and Arp: (1) Defendants Heilig and Arp subjected Plaintiff to excessive force in violation of the Eighth Amendment; (2) Defendants Heilig and Arp subjected Plaintiff to excessive force in retaliation for requesting to speak with a supervisor; and (3) Defendant Heilig charged Plaintiff with a misconduct violation in retaliation for requesting to speak with a supervisor. Both Defendants and Plaintiff now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-

moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. Retaliation

Plaintiff alleges that, in retaliation for "requesting to speak with a supervisor, Defendants Heilig and Arp subjected him to excessive force, and Defendant Heilig charged him with a misconduct violation. To prevail on his retaliation claims, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

In his amended complaint, Plaintiff alleged that following the search of his cell, he requested to speak with a supervisor on two separate occasions. Plaintiff alleged that he first requested to speak with a supervisor immediately after the search of his cell and then, approximately 45 minutes later, reiterated his request when his cell was opened for "medication lines." At his deposition, however, Plaintiff offered a slightly different version of events.

Specifically, Plaintiff testified that he only requested to speak with a supervisor when he "came out [of his cell] at med line time." (ECF No. 86-2, PageID.621-24). Plaintiff concedes, however, that, because he was not receiving medication, he was not permitted to exit his cell at that time. (*Id.*, PageID.624). Plaintiff further concedes that he refused commands to re-enter his cell and instead "stood in [his] doorway . . . not allowing [his cell] door to shut." (*Id.*). As a result, Plaintiff was convicted of disobeying a direct order. (ECF No. 78-18, PageID.488-89). It is well understood that, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'" *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). Thus, because Plaintiff concedes that he violated prison rules by exiting his cell to request to speak with a supervisor, he was not engaged in protected conduct. Accordingly, the undersigned recommends that, with respect to Plaintiff's retaliation claims, Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

## II. Excessive Force

Plaintiff alleges that following his refusal to re-enter his cell, Defendants Heilig and Arp transported him to a different area of the prison, during which time Defendants subjected him to excessive force. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims

alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment. *Ibid.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). While the Eighth Amendment does not prohibit every *de minimis* use of physical force, where "prison officials maliciously and sadistically use force to cause harm," contemporary standards of decency "always are violated" regardless whether the force applied was *de minimis* or resulted in injury. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness," or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to

temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Ibid.* As the Supreme Court recently observed:

> When prison officials maliciously and sadistically use force to cause harm, the Court recognized, contemporary standards of decency always are violated. . .whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.
>
> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010) (internal citations and quotations omitted).

In support of their motion for summary judgment, Defendants have submitted video evidence of Plaintiff being escorted from his cell to a different location in the prison. Specifically, Defendants have submitted: (1) evidence recorded by a camera located within a taser that one of the prison personnel possessed during the incident in question, and (2) evidence recorded by facility security cameras. (ECF No. 82, Exhibits C and T).

This evidence can be placed into three broad categories: (1) video of Plaintiff being escorted through the prison corridor; (2) video of Plaintiff being escorted down a stairwell, and (3) video of Plaintiff being forced to the ground. The evidence of Plaintiff being escorted through the corridor appears to be uneventful. Plaintiff is restrained and being escorted by Defendants and two additional prison guards. Once the group reaches the stairwell, it appears that Plaintiff takes a step to his right immediately after which the guard holding Plaintiff's left arm responds by turning toward Plaintiff in an apparent attempt to gain greater control over Plaintiff. Upon reaching the bottom of the stairwell, the group takes several steps forward before forcing Plaintiff to the ground. A brief struggle then ensues, after which Plaintiff is returned to his feet, albeit under greater physical control, and escorted to his destination.

The evidence submitted by the parties regarding the events displayed on this video evidence varies significantly. Defendants Heilig and Arp testified that, as the group approached the stairwell, Plaintiff began resisting by shifting his weight into Defendant Heilig which caused the group to almost tumble down the stairwell. (ECF No. 78-5, 78-20, PageID.440-59, 497-504). Defendants further testified that, in response to Plaintiff's actions, they acted to gain greater control over Plaintiff and were ultimately compelled to force Plaintiff to the ground due to his unwillingness to comply. (*Id.*). Plaintiff denies resisting and asserts that Defendants used his alleged resistance as an excuse to assault him. (ECF No. 78-2, PageID.410-28; ECF No. 86-2, PageID.620-35). Plaintiff testified that, as a result, he suffered "some broken ribs" and injuries to

his hip, pelvis, foot, and neck. (*Id.*). Medical evidence, including x-rays demonstrating two rib fractures, supports Plaintiff's contention that he was injured during the encounter in question. (ECF No. 86-3, PageID.636-56).

The video evidence neither confirms nor refutes Plaintiff's or Defendants' version of events. Simply put, a juror, if he chooses to believe Defendants' version of events, could reasonably conclude that Defendants' actions were justified and a reasonable response to Plaintiff's resistance and refusal to comply with commands. On the other hand, a juror, if he chooses to believe Plaintiff's version of events, could reasonably conclude that Defendants did not act in good faith to maintain or restore discipline, but instead acted maliciously or sadistically with the intent to injure Plaintiff.

Accordingly, with respect to Plaintiff's Eighth Amendment claims, the undersigned recommends that Defendants' motion for summary judgment be denied and that Plaintiff's motion for summary judgment be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 77) be granted in part and denied in part, and that Plaintiff's Motion for Summary Judgment (ECF No. 88) be denied. Specifically, the undersigned recommends that Plaintiff's retaliation claims be dismissed, but Plaintiff's Eighth Amendment claims proceed forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                             Respectfully submitted,

Date: January 21, 2021                         /s/ Phillip J. Green
                                                             PHILLIP J. GREEN
                                                             United States Magistrate Judge