UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON CANTRELL #397429,

    Plaintiff,

v

ANTHONY HEILIG and
SCOTT ARP,

    Defendants.

No. 1:18-cv-1163

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

| | |
|---|---|
| Laurence H. Margolis (P69635) | O.G. Reasons (P80463) |
| Ian T. Cross (P83367) | James E. Keathley (P77488) |
| Margolis & Cross | Assistant Attorneys General |
| Attorneys for Plaintiff | Mich. Dep't of Attorney General |
| 214 S. Main St., Ste. 200 | Attorneys for Defendants |
| Ann Arbor, MI 48104 | Corrections Division |
| (734) 994-9590 | P.O. Box 30217 |
| larry@lawA2.com | Lansing, MI 48909 |
| ian@lawinannarbor.com | (517) 335-3055 |
| | reasonso@michigan.gov |
| | keathleyj@michigan.gov |

## DEFENDANTS' BRIEF REGARDING PLAINTIFF'S NEW CLAIMS ASSERTED DURING TRIAL

O.G. Reasons (P80463)
Assistant Attorney General
Mich. Dep't of Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
Email: reasonso@michigan.gov
[P80463]

Dated:  September 28, 2022

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Should this Court dismiss new claims asserted by Plaintiff at trial which were not exhausted and not contained in his complaint or anywhere else in the four-year history of this matter, and where the Defendants were immensely prejudiced by being blindsided with new claims that they did not have the ability to investigate or prepare a defense for?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:

    1.    <u>Exhaustion</u>: *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006) (holding that the PLRA requires "proper exhaustion of administrative remedies," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").

## STATEMENT OF FACTS

Plaintiff Jason Cantrell, a prisoner that was under the custody of the Michigan Department of Corrections (MDOC), brings this civil rights lawsuit under 42 U.S.C. § 1983 alleging excessive force by Bellamy Creek Correctional Facility (IBC) Corrections Officers Anthony Heilig and Scott Arp during an August 19, 2017, incident. Defendants Heilig and Arp adopt by reference, under Fed. R. Civ. P. 10(c), the statement of facts made in their (ECF Nos. 77 & 78) summary judgment motion and brief in support, and (ECF No. 145) trial brief. Cantrell filed (ECF No. 1) his first complaint on October 11, 2018, and an amended complaint on September 14, 2019. (ECF. No 40).

On September 28, 2022, during testimony at his jury trial, Cantrell for the first time in the four-year history of this case, made the claim that Defendants, on two distinct instances, choked him in blind-spot hallways during his escort to segregation. Nowhere in his initial complaint does Cantrell make any claims that Defendants choked him during his escort to segregation. Likewise, even with the assistance of counsel, nowhere in his amended complaint does Cantrell make any claims that Defendants choked him during his escort to segregation. Notably, Plaintiff added an additional retaliation claim in his amended complaint, yet did not add his newly asserted claim.

Cantrell also did not make this claim during his deposition. Cantrell did reference being choked during his deposition. However, he made it crystal clear that this supposed incident occurred outside of any housing unit. (Ex. A, Cantrell Dep., pp 31, 42-43). Cantrell was asked to clarify by both his attorney and

1

Defendants' attorney where this incident occurred. Cantrell reasserted that this occurred 10-15 feet outside of the housing unit and that he was in the "yard." (Id., at 42-43). He repeated two more times that he was outside of any housing unit. (Id.). The deposition is abundantly clear on this factual assertion by Cantrell. Moreover, Cantrell was specifically asked about the hallway in the segregation unit. (Id., at 32). Cantrell was asked if Defendants did anything to him in that hallway, and Cantrell stated, "No." (Id.).

Furthermore, Cantrell never asserted in a grievance that he was choked by Defendants during the escort, much less that he was stopped and choked for long periods of time as he now testifies to.

Pursuant to MDOC Policy Directive (P.D.) 03.02.130, "Prisoner/Parolee Grievances," (effective date 07/09/2007), within two business days of a grievable issue, a grievant must attempt to reconcile the issue with the staff member involved; the grievant must then file a Step I grievance within five business days. To exhaust administrative remedies through the grievance process, a prisoner must pursue grievances through Step III of the grievance process. (*Id.*) A prisoner's Step III Grievance Report tracks all of the grievances that had been filed at Step III. (Ex. B, Step III Grievance Report.) Cantrell's Step III Grievance Report shows that, before he filed his original complaint, he had completed through Step III only two Step III grievances arising out of IBC, only one of which is relevant to the claims raised in his complaint (highlighted):

2

| Grievance No.[1]  (Ex. 2 Pincite) | Def.(s) named at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| IBC-17-08-1814-26i  (4–8) | Heilig | On 8-21-17, Heilig threatened Cantrell. | Step I: denied  Step II: denied  Step III: denied |
| IBC-17-08-1815-27a  (9–13) | Heilig, Arp | On 8-19-17, Heilig, Arp and other officers subjected Cantrell to excessive force; specifically, Arp tripped him and four officers fell on top of him | Step I: denied (Mikel* was Step I respondent)  Step II: denied  Step III: denied |

Cantrell never asserted in either the Step I, II, or III step of his grievance his newly asserted claims.

Now, On September 28, 2022, the second day of the trial, Cantrell testified that Defendants choked him twice during the escort from his housing unit building (Unit 2) to the segregation building (Unit 8): first in a "blind spot" in a hallway in his housing unit building, and again in a "blind spot" in a hallway in the segregation building.

---

[1] The grievance identifier consists of the facility's three-letter abbreviation, the year of the grievance's filing, the month of the grievance's filing, a number unique to each grievance, and the grievance category code; the identifier is abbreviated using the facility abbreviation and the unique number.

3

# ARGUMENT

## I. Cantrell did not exhaust administrative remedies on any claims against Defendants Heilig or Arp.

Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights action with respect to prison conditions brought under any federal law if he did not first exhaust all available administrative remedies. The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quotation omitted). Exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Nussle*, 534 U.S. at 523. Exhaustion is an issue that must be determined before the Court can review the merits of the plaintiff's claims and the remaining defenses.

The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Id.* at 524.

Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. *Ngo*, 548 U.S. at 94. This is important in relation to prison systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973). Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system regarding the allegations made in his complaint.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219. The administrative process applicable to Cantrell's grievable claims is governed by MDOC P.D. 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007).

Here, Cantrell failed to exhaust his new testified to claims against Defendants Heilig and Arp. Cantrell had pursued only one Step III grievance relevant to the claims in his complaint—IBC-1815. (Ex. B at 9–13.) "Under the [MDOC's] procedural rules, inmates must include the 'names of all those involved in the issue being grieved' *in their initial grievance*." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (emphasis added). In the Step I grievance for IBC-

5

1815, Cantrell alleged that Heilig and Arp subjected him to excessive force on August 19, 2017, but Cantrell did not allege that Heilig or Arp choked him during his escort (much less choked him two separate times in two separate locations):

[Handwritten grievance form image]

(Ex. 2 at 12.) Notably, Cantrell also did not make any allegations about choking in his appeals to Step II and to Step III (Ex. 2 at 10), nor did he pursue any other Step III grievance which alleged choking by Heilig or Arp.

Here, to the extent that IBC-1815 exhausted any claims, it is limited to those claims specifically raised in his grievance. Cantrell cannot rely on IBC-1815 to claim exhaustion of his newly asserted choking claims against Heilig or Arp. This is because Cantrell needed to specifically raise the choking claims against Heilig and Arp in his Step I grievances. *See, e.g., Hall v. Warren*, 443 Fed. App'x 99, 106 (6th Cir. 2011) (dismissing claim against prison doctor for alleged denial of medical care where inmate's underlying "grievance [was] exclusively concerned with the need for a transfer to a tobacco-free unit"); *McDaniel v. Bechard*, No. 4:15-cv-13892, 2017

6

WL 3699762, at *6 (E.D. Mich. Aug. 2, 2017) ("As to McDaniel's claim that Bechard denied him food, the undisputed evidence shows that McDaniel made no reference to the alleged denial of food in his Grievance or appeals, . . . [a]ccordingly, . . . he did not exhaust any claim about the denial of food."), *R&R adopted,* 2017 WL 5712898 (E.D. Mich. Nov. 28, 2017); *Ward v. Luckey*, No. 12-cv-14875, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 10, 2013) ("It is not enough for Ward to show only that an underlying grievance was filed; he must show that he exhausted his administrative remedies with respect to the retaliation claim.").

The purpose of the exhaustion requirement is to alert corrections officials as to a prisoner's complaints and allow them time and opportunity to address such complaints internally. *Nussle*, 534 U.S. at 525. Cantrell did not make any allegations of choking in his Step I grievance for IBC-1815 (Ex. 2 at 12), his complaint (ECF No. 1), or his amended complaint (ECF No. 40). Instead, the first instance where he alleged "outside" choking was in his deposition—during the course of this federal lawsuit—and the first instance where he alleged "inside" choking was on September 28, 2022—during trial. To reach an alternate conclusion and let Cantrell assert choking claims against Heilig or Arp nullifies the exhaustion requirement.

If the exhaustion prerequisite of the PLRA is to have any meaning, it must carry sanctions for noncompliance with administrative procedural requirements. *Ngo*, 548 U.S. at 95. Here, prior to filing suit challenging the conditions from which this lawsuit arose, the PLRA required that Cantrell exhaust his administrative

7

remedies regarding those conditions or actions. *Nussle*, 534 U.S. at 523. The PLRA requires that Cantrell comport with all of MDOC's procedural requirements in order to properly exhaust administrative remedies. *Ngo*, 548 U.S. at 95. Cantrell did not properly exhaust his choking claims against Defendants Heilig or Arp. Cantrell's failure to bring his choking claims against Heilig and Arp prevented MDOC from addressing and reviewing the merits of these claims. *Ngo*, 548 U.S. at 90, 92. Accordingly, Cantrell failed to complete the administrative review process regarding his choking claims against Heilig and Arp. *Id.* at 88; *Nussle*, 534 U.S. at 523. This Court should therefore dismiss Cantrell's choking claims from this lawsuit.

## CONCLUSION AND RELIEF REQUESTED

Cantrell has failed to exhaust administrative remedies of his choking claims against Defendants Heilig or Arp. This Court should therefore dismiss Cantrell's choking claims from this lawsuit.

*/s/ O.G. Reasons (P80463)*
O.G. Reasons (P80463)
Assistant Attorney General
Mich. Dep't of Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
Email: reasonso@michigan.gov
[P80463]

Dated: September 28, 2022

## **CERTIFICATE OF SERVICE**

   I hereby certify that on September 28, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing.

              */s/ O.G. Reasons*
              O.G. Reasons
              Assistant Attorney General
              Michigan Dept. of Attorney General